**UNITED STATES SHOE CORPO- RATION, Plaintiff–Appellee,**

v.

**UNITED STATES, Defendant– Appellant.**

No. 98–1574.

United States Court of Appeals, Federal Circuit.

July 23, 2002.

James S. O'Kelly, Barnes, Richardson & Colburn, of New York, New York, argued for plaintiff-appellee. With him on the brief were Harvey A. Isaacs and Robert T. Stack, Tompkins & Davidson, LLP, of New York, New York. Of counsel on the brief were Alan Goggins and Kevin J. Sullivan, Barnes, Richardson & Colburn.

Jeffrey A. Belkin, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; and Todd M. Hughes, Assistant Director. Of counsel on the brief was Richard McManus, Office of the Chief Counsel, United States Customs Service, of Washington, DC. Of counsel was Lara Levinson, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC.

John J. Galvin, Galvin & Mlawski, of New York, New York, for amicus curiae Arbon Steel & Service Co.

John M. Peterson, Neville Peterson LLP, of New York, New York, for amici curiae Totes Isotoner, Inc., et al. With him on the brief were George W. Thompson, Michael K. Tomenga, and Maria E. Celis.

Barry E. Cohen, Crowell & Moring LLP, of Washington, DC, for amicus curiae E.I. Du Pont de Nemours & Co.

Before MAYER, Chief Judge, RADER and BRYSON, Circuit Judges.

MAYER, Chief Judge.

The United States appeals the judgment of the Court of International Trade granting United States Shoe Corporation's motion for payment of interest on its refund of the Harbor Maintenance Tax. *United States Shoe Corp. v. United States*, 1998 WL 358950, 20 I.T.R.D. (BNA) 1703 (Ct. Int'l Trade 1998). Because the payment of interest is not mandated by statute or the Constitution, we reverse.

*Background*

The Harbor Maintenance Tax was enacted by Congress as part of the Water

Resources Development Act of 1986. 26 U.S.C. §§ 4461–4462 (2000). It levied a 0.125 percent ad valorem tax on commercial cargo for any port use. *Id.* § 4461(b). In 1995, the Court of International Trade decided that the tax imposed on exports was unconstitutional because it violated the Export Clause's mandate that "[n]o Tax or Duty shall be laid on Articles exported from any State," U.S. Const. art. I, § 9, cl. 5. *See United States Shoe Corp. v. United States,* 907 F.Supp. 408 (Ct. Int'l Trade 1995). The court then decided that in addition to a refund of the tax payment, interest was due pursuant to 28 U.S.C. § 2411. *United States Shoe Corp. v. United States,* 1996 WL 61643, 20 C.I.T. 206 (Ct. Int'l Trade 1996). The award of interest was stayed until appellate proceedings on the constitutionality of the tax were complete.

On appeal, this court agreed that the tax was unconstitutional, *United States Shoe Corp. v. United States,* 114 F.3d 1564 (Fed.Cir.1997), and the Supreme Court affirmed, stating that the tax "is not a fair approximation of services, facilities, or benefits furnished to exporters, and therefore does not qualify as a permissible user fee," *United States v. United States Shoe Corp.,* 523 U.S. 360, 363, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998). The stay on the payment of interest dissolved, and pursuant to its 1996 judgment, the Court of International Trade awarded U.S. Shoe interest. The United States asks that we reverse the judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

### Discussion

■ We review statutory interpretation by the Court of International Trade without deference. *Saarstahl AG v. United States,* 78 F.3d 1539, 1542 (Fed.Cir.

1996). Constitutional interpretation is also a question of law, which we review *de novo.* *Florida Sugar Mktg. & Terminal Ass'n, Inc. v. United States,* 220 F.3d 1331, 1333 (Fed.Cir.2000). A court may fashion equitable remedies, but it may not abuse its discretion in doing so. *Massie v. United States,* 226 F.3d 1318, 1321 (Fed.Cir. 2000). An equitable remedy here must not be (1) clearly unreasonable, arbitrary or fanciful or (2) based on an erroneous conclusion of law. *Institut Pasteur & Genetic Sys. Corp. v. Cambridge Biotech Corp.,* 186 F.3d 1356, 1369 (Fed.Cir.1999).

■ Interest may only be recovered in a suit against the government if there has been a clear and express waiver of sovereign immunity by contract or statute, or if interest is part of compensation required by the Constitution. *Library of Congress v. Shaw,* 478 U.S. 310, 311, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 47, 49 S.Ct. 52, 73 L.Ed. 170 (1928). U.S. Shoe argues that interest is due on its payment of the Harbor Maintenance Tax under (1) statutory provisions providing for the payment of interest, (2) the Takings and Export Clauses of the Constitution, and (3) the discretionary power of a court to fashion equitable remedies.

### I.

The government argues that the Court of International Trade erred in awarding U.S. Shoe interest because the United States has not expressly consented to such an award, relying on *International Business Machines Corp. v. United States,* 201 F.3d 1367, 1374 (Fed.Cir.2000). We agree. *IBM* looked to the statutes which waived immunity to pay interest and concluded that neither a tax related statute, 28

U.S.C. § 2411, nor customs related statutes, 28 U.S.C. § 2644 and 19 U.S.C. § 1505, permitted the award. *Id.*

■ First, 28 U.S.C. § 2411 provides: "In any judgment of any court rendered ... for any overpayment in respect of any internal-revenue tax, interest shall be allowed ... from the date of the payment...." *IBM* held that the Harbor Maintenance Tax statute, 26 U.S.C. § 4462, expressly prohibited the application of section 2411 because it is a tax law, and not a customs law. 201 F.3d at 1372. Section 4462(f)(1) states that "all administrative and enforcement provisions of customs laws and regulations shall apply ... as if such tax were a customs duty." "[A]dministration and enforcement" encompass the "assessment and collection of tax payments and issuance of refunds and interest on those refunds." 201 F.3d at 1372. Because section 2411 does not apply to refunds of the tax, *id.* at 1373, the Court of International Trade improperly awarded U.S. Shoe interest under it.

■ Second, 28 U.S.C. § 2644 provides for post-summons interest for claims that invoke the Court of International Trade's jurisdiction under 28 U.S.C. § 1581(a). For review under this subsection, a party must have filed a protest under section 515 of the Tariff Act of 1930. 28 U.S.C. § 1581(a) (2000). In *IBM*, section 1581(a) jurisdiction was not invoked because IBM did not file a customs protest; therefore section 2644 interest could not be awarded. 201 F.3d at 1374. Instead, jurisdiction in *IBM* arose under section 1581(i), the residual jurisdiction provision. *Id.* Likewise in this case, the Supreme Court held that jurisdiction was proper under section 1581(i), *U.S. Shoe*, 523 U.S. at 365, 118 S.Ct. 1290, thereby prohibiting an award of section 2644 interest.

■ Third, 19 U.S.C. § 1505 provides for prejudgment interest, and states in relevant part that "[i]nterest on excess moneys deposited shall accrue ... from the date the *importer* ... deposits estimated duties, fees, and interest ... to the date of liquidation or reliquidation of the applicable entry or reconciliation [of the *imports* ]." 19 U.S.C. § 1505(c) (emphases added). *IBM* held that section 1505(c) does not apply to exports because it speaks only to ·imports and declined to rewrite the "Congressional enactment to make it fit a case for which it was clearly not intended." 201 F.3d at 1374.

U.S. Shoe and amicus argue that *IBM*'s interpretation is too restrictive, and that section 1505(c) should apply to exports as well as imports. They rely by analogy on the Supreme Court's holding that review of the Harbor Maintenance Tax on exports could be heard under the Court of International Trade's jurisdictional statute, section 1581(i), referring only to imports: "True, § 1581(i) does not use the word 'exports.' But that is hardly surprising in view of the Export Clause, which confines customs duties to imports." *U.S. Shoe*, 523 U.S. at 366, 118 S.Ct. 1290. U.S. Shoe urges that "exports" be read into section 1505(c) also. The Court, however, was reviewing the entire statute, and the tax on imports provided a sufficient basis for jurisdiction because the "HMT statute, although applied to exports here, does apply equally to imports." *Id.* We believe the Court's reasoning is sound for the purpose of establishing jurisdiction, but an insufficient basis upon which sovereign immunity may be waived in light of the "Supreme Court's mandate that Congress must expressly consent to an award of interest." *IBM*, 201 F.3d at 1374.

## II.

■ The government also argues that the Constitution does not mandate the

payment of prejudgment interest. We agree. The Harbor Maintenance Tax was not a taking, but a violation of the Export Clause, for which no prejudgment interest is due. If not granted by statute, the Supreme Court has held only the Fifth Amendment of the Constitution to mandate the payment of interest. *Shaw,* 478 U.S. at 317 n. 5, 106 S.Ct. 2957; *Smyth v. United States,* 302 U.S. 329, 353–54, 58 S.Ct. 248, 82 L.Ed. 294 (1937); *Boston Sand & Gravel,* 278 U.S. at 47, 49 S.Ct. 52. The Fifth Amendment states that private property shall not be "taken for public use, without just compensation." U.S. Const. amend. V. The principle that the "just compensation" language includes the payment of interest from the time of the taking is long standing. *Seaboard Air Line Ry. Co. v. United States,* 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664 (1923) ("The requirement that 'just compensation' shall be paid is comprehensive ... and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation.").

■ U.S. Shoe argues that the Harbor Maintenance Tax was a taking in violation of the Fifth Amendment because it was an unlawful confiscation of its property. We do not agree. The government's act of taxation here was not a *per se* taking of private property. *United States v. Sperry Corp.,* 493 U.S. 52, 62 n. 9, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989) (considering and rejecting the view that money is private property that can be physically occupied by the government: "Unlike real or personal property, money is fungible."). Nor is the tax a regulatory taking: "[R]egulatory actions requiring the payment of money are not takings." *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1339 (Fed.Cir.2001) (en banc) (relying on

the reasoning of five justices in *Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998)); *Atlas Corp. v. United States,* 895 F.2d 745, 756 (Fed.Cir.1990) ("Requiring money to be spent is not a taking of property.").

■ A "reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services." *Sperry,* 493 U.S. at 63, 110 S.Ct. 387. The Harbor Maintenance Tax was imposed to "defray the cost of harbor development and maintenance." *U.S. Shoe,* 523 U.S. at 370, 118 S.Ct. 1290. In *Pace v. Burgess,* 92 U.S. 372, 375, 23 L.Ed. 657 (1875), a stamp fee placed on packages of tobacco for export was upheld because it "bore no proportion whatever to the quantity or value of the package on which it was affixed" and was not excessive. Here, the fee was declared unconstitutional because it was proportional to the value of the exported goods and not the actual use of the harbors. *U.S. Shoe,* 523 U.S. at 369, 118 S.Ct. 1290 ("[T]he connection between a service the Government renders and the compensation it receives for that service must be closer than is present here ... the extent and manner of port use depend on factors such as the size and tonnage of a vessel, the length of time it spends in port, and the services it requires."). But it was not excessive. Under *Sperry,* a user fee of 1.5 percent "does not qualify as a 'taking' by any standard of excessiveness." 493 U.S. at 62, 110 S.Ct. 387. Similarly, purely by its amount, 0.125 percent, 26 U.S.C. § 4461(b) (2000), the Harbor Maintenance Tax must be considered reasonable. Because "the Takings Clause is less restrictive than the Export Clause," *U.S. Shoe,* 523 U.S. at 369, 118 S.Ct. 1290, and the tax would be sustained if it "fairly match[ed] the exporters' use of port ser-

vices and facilities," *id.* at 370, 118 S.Ct. 1290, we conclude that the tax did not rise to the level of a taking.

U.S. Shoe also contends that the government's retention of the interest income earned on the tax revenue is a continuing taking. But U.S. Shoe has not established a private property right in the interest generated by the payment of the tax. *See Eastern Enterprises,* 524 U.S. at 543, 118 S.Ct. 2131 (Kennedy, J., concurring). The Harbor Maintenance Tax did not "appropriate, transfer, or encumber an estate in land . . ., a valuable interest in an intangible . . ., or even a bank account or [its associated] accrued interest." *Id.* at 540, 118 S.Ct. 2131. For the accrued interest to rise to the level of private property, the principal must be held in an identified private account. *See Phillips v. Washington Legal Found.,* 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (stating that client fees held in trust accounts constituted "private property"). And then any interest accrued belongs to the owner of the principal. *Id.* at 172, 118 S.Ct. 1925 (holding that the "interest income generated by funds held in IOLTA accounts [client accounts] is the 'private property' of the owner of the principal"). The tax revenue here was not held by the government as property of U.S. Shoe. It became the property of the Treasury upon payment, and was appropriated to the Harbor Maintenance Trust Fund along with user fees on imports, passenger cruise ships, and domestic shipments, and other statutory fees. 26 U.S.C. § 9505(b) (2000). Accordingly, the interest earned on the tax payments is also the property of the government. And its use for harbor maintenance expenditures, *id.* § 9505(c), cannot be a taking.

U.S. Shoe also argues that the Harbor Maintenance Tax was so arbitrary

that it was an egregious violation of due process, and therefore a taking. *See Brushaber v. Union Pac. R.R. Co.,* 240 U.S. 1, 24–25, 36 S.Ct. 236, 60 L.Ed. 493 (1916) ("[A]lthough there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation but a confiscation of property, that is, a taking. . . ."). We do not agree. The tax was not arbitrary because it served the rational purpose of maintaining the ports. *See U.S. Shoe,* 114 F.3d at 1579 (Mayer, C.J., dissenting) ("Congress mandated that fees collected from the HMT be used only for commercial navigation projects."); *see also Moore v. City of E. Cleveland, Ohio,* 431 U.S. 494, 547, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (White, J., dissenting on other grounds) (statutes restrictive of liberty must have "an ascertainable purpose and represent a rational means to achieve that purpose. . . ."). The Court struck down the tax because it was improperly calculated, not because its purpose was unascertainable or nefarious. *U.S. Shoe,* 523 U.S. at 363, 370, 118 S.Ct. 1290 (The tax was not "a fair approximation of services, facilities, or benefits furnished to the exporters," but "[t]his does not mean that exporters are exempt from any and all user fees designed to defray the cost of harbor development and maintenance."). Moreover, the tax cannot be a taking because the Supreme Court determined that the tax violated the Export Clause, not the Takings Clause. *Id.* at 368, 118 S.Ct. 1290 ("Those decisions [discussing user fees] [including *Sperry,* a takings case] involved constitutional provisions other than the Export Clause, however, and thus do not govern here.").

In the alternative, U.S. Shoe argues that the Export Clause mandates the

payment of interest. It cites *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir.2000), that a claim against the government for a violation of the Export Clause is money mandating, and requires "a return of money unlawfully exacted." *Cyprus Amax,* however, was premised on the award of money damages to U.S. Shoe "equaling the amount exacted under the HMT" only, *id.* at 1374; *U.S. Shoe,* 114 F.3d at 1577, and does not discuss, nor stand for the proposition that interest must be awarded.

U.S. Shoe also relies on *Hatter v. United States,* 38 Fed. Cl. 166 (1997), to assert that violations of constitutional clauses other than the Takings Clause require the payment of interest. In *Hatter,* the Court of Federal Claims decided that judges were due interest on money owed because of an Article III Compensation Clause violation. *Id.* at 183. *See also Hatter v. United States,* 64 F.3d 647, 653 (Fed.Cir. 1995), *aff'd in part, rev'd in part, United States v. Hatter,* 532 U.S. 557, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001) (affirming that discriminatory taxes imposed on sitting judges violated the Compensation Clause). The interest issue, however, was not appealed by the government, and the final judgment of the Court of Federal Claims is not binding upon us. *Aleman Food Servs., Inc. v. United States,* 994 F.2d 819, 822 (Fed.Cir.1993). Even if interest is mandated under the Compensation Clause, the reasoning upon which this conclusion is based does not extend to the Export Clause.

Under the Compensation Clause, "Judges ... shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." U.S. Const. art. III, § 1. The construction of the Export Clause

differs from the Compensation Clause. The Export Clause is prohibitive, "No Tax or Duty shall be laid on Articles exported from any State," U.S. Const. art. I, § 9, cl. 5, while the Compensation Clause requires that judges shall receive "Compensation." Such "Compensation" must be paid at "stated Times," indicating that if it is not paid when due, interest should be paid to compensate for the delay. *Hatter,* 38 Fed. Cl. at 183. And the rationale, that the government should pay interest if it unlawfully withholds judges' pay to maintain the separation of powers, does not apply to the Export Clause. *Id.*

Like the Export Clause, the Takings Clause is also prohibitive, "nor shall private property be taken for public use," but it is coupled with the restorative clause, "without just compensation." U.S. Const. amend. V. The Export Clause's prohibition lacks similar remedial language. U.S. Shoe asserts, nevertheless, that the Supreme Court's reasoning in *Monongahela Navigation Co. v. United States,* 148 U.S. 312, 326, 13 S.Ct. 622, 37 L.Ed. 463 (1893), reading "compensation" to require the "full and perfect equivalent for the property taken," and its subsequent interpretation that such compensation requires the payment of interest, *Seaboard Air Line,* 261 U.S. at 305–06, 43 S.Ct. 354, applies to the Export Clause. And because a violation of the Export Clause requires a return of the money excised, its perfect equivalent entails both principal and interest. We are unwilling to import the Court's interpretation of "Compensation" into the Export Clause where the word "compensation" does not appear. Instead, we prefer to "follow the express textual command of the Export Clause." *United States v. Int'l Bus. Machs.,* 517 U.S. 843, 862, 116 S.Ct. 1793, 135 L.Ed.2d 124 (1996); *see also id.* at 857, 116 S.Ct. 1793 ("We have good

reason to hesitate before adopting the analysis of our recent Import Export Clause cases into our Export Clause jurisprudence.... [M]eaningful textual differences exist and should not be overlooked.").

### III.

 Finally, the government argues that principles of equity are insufficient to waive the government's sovereign immunity. We agree. The equitable doctrine of restitution and unjust enrichment are powerful remedies of fairness. But true to the "no-interest rule," under which a waiver of sovereign immunity for an award of interest must be affirmative and unequivocal, *Shaw,* 478 U.S. at 311, 106 S.Ct. 2957, the foregoing analysis demonstrates that a judge-fashioned remedy here would be an abuse of discretion. *See IBM,* 201 F.3d at 1374; *Kalan, Inc. v. United States,* 944

F.2d 847, 850 (Fed.Cir.1991) ("Neither we nor the Court of International Trade can supply by creative interpretation the necessary clear direction [to award interest] that Congress omitted.").

### *Conclusion*

Accordingly, the judgment of the Court of International Trade is reversed.

*REVERSED.*