**Connie J. TRITT, Petitioner,**

v.

**Pedro A. CORTES, Secretary of the Commonwealth, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2003.
Decided Nov. 18, 2003.

Wayne F. Shade, Carlisle, for petitioner.

Christal Pike–Nase, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

Before this Court, in our original jurisdiction, are the preliminary objections of the Honorable Pedro A. Cortes, Secretary of the Commonwealth (Secretary) to the petition for review filed by Connie J. Tritt (Ms. Tritt). This Court sustains the preliminary objection based on Ms. Tritt's failure to state a claim upon which relief may be granted.

On June 24, 2003, Ms. Tritt filed in this Court a petition for declaratory judgment and writ of mandamus, treated as a petition for review. Ms. Tritt alleges:

### COUNT I

### DECLARATORY JUDGMENT

. . . .

5. The Secretary discharges his responsibilities for the appointment and commissioning of Notaries Public in and for the Commonwealth of Pennsylvania through the Notary Division (hereinafter the "Division") of the Bureau of Commissions, Elections and Legislation of the Department [of State].

6. Petitioner [Ms. Tritt] has been commissioned as a Notary Public in Cumberland County, Pennsylvania, continuously since October 5, 1988.

7. Petitioner's [Ms. Tritt's] most recent reappointment as a Notary Public computes from October 5, 2000.

8. On May 5, 2003, the Division received Petitioner's [Ms. Tritt's] Application for Reappointment as a Notary Public (hereinafter the "Application"), a true and correct copy of which is attached hereto as Exhibit "A". . . .

9. The Application was properly completed in all respects, and the accompanying fee of $40 was the correct fee therefore.

10. The Secretary through his agents . . . retained Petitioner's [Ms. Tritt's] fee, but refused to accept her Application.

11. Petitioner's [Ms. Tritt's] Application was returned to her with a post-it note attached to the face of the Application, a true and correct copy of which post-it note is attached hereto as Exhibit "B". . . .

12. On December 9, 2002, the Act of August 21, 1953 (P.L. 1323, No. 373), known as The Notary Public Law (hereinafter the "NPL"), was amended by Act No. 151 of 2002 (hereinafter the "amendments"), effective July 1, 2003.

13. In said post-it note, the Division is telling Petitioner [Ms. Tritt] that she cannot apply for reappointment as a Notary Public until August of 2004 and that she will then be required to complete the educational requirements that are set forth in the amendments in order to be reappointed.

14. Section 3 of the amendments amended Section 5 of the NPL to provide in § 5(c) of the NPL, as follows:

Section 5. **Application to Become a Notary Public.**

. . . .

(c) As a condition for the Secretary of the Commonwealth's issuance of a no-

tary commission to an applicant **not appointed to the office of notary public as of the effective date of this subsection,** a notary applicant must complete at least three (3) hours of approved notary education within the six (6) month period immediately preceding their application.

15. Section 4 of the amendments amended Section 6 of the NPL to provide, as follows:

Section 6. Application for Reappointment.

Applications for reappointment to the office of notary public shall be filed at least two months prior to the expiration of the commission under which the notary is acting. Persons seeking reappointment must continue to meet the requirements set forth in section 5 in order to be reappointed.

16. The "requirements set forth in section 5" for **reappointment** do not include educational requirements where the legislature made a point in Section 5(c) of expressly restricting the educational requirements to persons "not appointed to the office of notary public as of the effective date of this subsection".

17. The language of the amendments distinguishes between provisions for appointment and reappointment.

18. There are eighteen specific references to appointment in the NPL, as amended.

19. There are eight specific references to reappointment in the NPL, as amended.

20. The heading to Section 5 is entitled: Application to **Become** a Notary Public. It does not say application for reappointment as a notary public.

21. The Secretary, though the Division, interprets the amendments to require applicants for reappointment, who were

appointed to the office of notary public as of the effective date of § 5(c) to complete the educational requirements of Section 5(c) as a condition for reappointment.

22. The interpretation by the Secretary, in effect, construes the word "appointment" to be synonymous with the word "reappointment".

23. Petitioner [Ms. Tritt] believes and therefore avers that it was the intention of the legislature to impose the educational requirements of Section 5(c) only upon applicants for appointment to the office of notary public to the exclusion of applicants for reappointment.

. . . .

## COUNT II

## MANDAMUS

. . . .

25. In filing her Application more than 16 months prior to the expiration of her current commission, Petitioner [Ms. Tritt] avers that she was in strict compliance with all of the provisions of the NPL, as amended, and, specifically, with the provisions of Section 6 of the NPL, as amended, which specify that "applications for reappointment to the office of notary public shall be filed at least two months prior to the expiration of the commission under which the notary is acting".

26. There is nothing in the NPL that restricts a Notary Public from obtaining a reappointment prior to expiration of an existing appointment.

27. Petitioner [Ms. Tritt] believes and therefore avers that the Secretary has a

nondiscretionary, ministerial duty to reappoint Petitioner [Ms. Tritt] as a Notary Public in Cumberland County, Pennsylvania, at this time for a new four year term and that he has refused to perform that duty.

28. Petitioner [Ms. Tritt] believes that, under the facts averred, she has a clear legal right to reappointment as a Notary Public in Cumberland County, Pennsylvania, and that she has no appropriate and adequate remedy other than a writ of mandamus.

Petition for Review, June 24, 2003, Paragraphs 5–23 & 25–28, at 2–7 (emphasis in original).

The Secretary preliminarily objects and asserts:

1) Ms. Tritt lacks standing to challenge the Secretary's interpretation of the amendments;

2) The petition for review should be dismissed for lack of ripeness; and

3) Ms. Tritt fails to state a claim upon which relief may be granted.

## STANDING

▉▉▉ Initially, the Secretary contends [1] that Ms. Tritt lacks standing in this matter. The Secretary maintains that Ms. Tritt's notary public commission does not expire until October 5, 2004, she is statutorily prohibited from completing the course before April 5, 2004, and she has never been denied appointment as a notary public.

▉▉▉ With regard to the criteria for standing, a litigant's interest must be substantial, direct, and immediate. *William*

---

1. "In ruling on preliminary objections, we accept as true all well and clearly pleaded facts as well as all inferences which are reasonably deducible therefrom. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery." *Merchant v. State Board of Medicine,* 162 Pa.Cmwlth. 332, 638 A.2d 484, 486 (1994) (citations omitted).

*Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). Our Pennsylvania Supreme Court therein discussed a test for standing "where the plaintiff has suffered (or will suffer) 'injury in fact' and the interest he seeks to protect is 'arguably within the zone of interests sought to be protected or regulated by the statute or constitutional guarantee in question.'" *Id.* at 199, 346 A.2d at 284 n. 23 (citations omitted).

Here, Ms. Tritt's concern about the notary education requirement falls within the applicable "zone of interests." Regardless of the fact that Ms. Tritt's commission does not expire until October 2004, it is necessary to consider the causal connection between the governmental action under scrutiny and the injury to the challenger. *See William Penn Parking Garage, Inc.,* 464 Pa. at 197, 346 A.2d at 283.

Based on the Secretary's directive to refuse a renewal application without proof of completion of the educational requirement it is clear that Ms. Tritt's failure to comply will result in the rejection of her renewal application. Standing is established given the close causal connection between the educational requirement set forth in the amendments and an injury to Ms. Tritt. Thus, the preliminary objection which alleges a lack of standing is overruled.

## FAILURE TO STATE A CLAIM

■ It is widely accepted that "courts will not disturb administrative discretion in interpreting legislation within an agency's own sphere of expertise absent fraud, bad faith, abuse of discretion or clearly arbitrary action." *Winslow–Quattlebaum v.*

*Maryland Insurance Group,* 561 Pa. 629, 636, 752 A.2d 878, 881 (2000).[2]

In the present controversy, the Secretary argues that he possesses the administrative discretion to make a reasonable interpretation of Sections 5(c) and 6 of The Notary Public Law (amended NPL), Act of August 21, 1953, P.L. 1323, *as amended,* 57 P.S. §§ 151(c) and 152. Based on the Secretary's interpretation of both sections, both applicants seeking initial appointment and applicants seeking reappointment as notaries must submit proof of completing three hours of education within six months preceding application.

On the other hand, Ms. Tritt focuses on Section 5(c) of the amended NPL[3] and construes it to mean that those with a notary commission on July 1, 2003, are forever after exempt from the education requirement.

■ In light of such a dispute, it is necessary to refer to the principles of statutory construction which our Pennsylvania Supreme Court recently summarized:

The polestar of statutory construction is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a) ... See *P.R. v. Com., Dept. of Public Welfare, Office of Hearings and Appeals,* 569 Pa. 123, 801 A.2d 478, 482 (2002). When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995). However, if "the words of the statute are not explicit" on the point at issue, "the intention of the General Assembly may be ascertained by considering, among other matters:"

**2.** This Court has foregone the sequence of the Secretary's arguments regarding the preliminary objections.

**3.** Section 5(c) was substantially amended by the Act of December 9, 2002, P.L. 1269.

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c). See P.R., supra. Moreover, the Act also requires that we presume that the General Assembly did not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1922(1)....

*Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder),* —— Pa.——, 834 A.2d 524, 531 (2003).

Here, the underlying purpose of the amended NPL is to introduce mandatory notary public education. To exempt those with a notary commission as of July 1, 2003, would diminish the educational purpose of the amended NPL and would lead to an unreasonable result, i.e. some notaries must meet the educational requirement while others are exempt.

■ Further, "statutes are to be construed together whenever possible and, unless an irreconcilable conflict exists, effect is to be given to all provisions." *Hamilton v. Unionville–Chadds Ford School District,* 552 Pa. 245, 249, 714 A.2d 1012, 1014 (1998). When Sections 5(c) and 6 of the amended NPL are read in conjunction with each other, the reasonable

conclusion is that notaries are "grandfathered" until their commissions expire on or after July 1, 2003. This Court agrees with the Secretary that Ms. Tritt fails to state a claim upon which relief may be granted.

Accordingly, this Court sustains the Secretary's preliminary objection for failure to state a claim upon which relief may be granted, and dismisses Ms. Tritt's petition for review.[4]

### ORDER

AND NOW, this 18th day of November, 2003, the preliminary objection of the Secretary of the Commonwealth for lack of standing is overruled. The preliminary objection of the Secretary of the Commonwealth for failure to state a claim upon which relief may be granted is sustained. Lastly, Connie J. Tritt's petition for review is dismissed.

---

**4.** *Because the preliminary objection for failure to state a claim is dispositive, this Court need not address the Secretary's preliminary* objection that the petition for review should be dismissed for lack of ripeness.