**Bruce L. SMITH, and All Others Similarly Situated, Petitioners**

v.

**Honorable Pedro A. CORTES, Secretary of State of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 2, 2005.
Decided July 19, 2005.

Joseph E. Altomare, Titusville, for petitioners.

Michael L. Harvey, Harrisburg, for respondent.

BEFORE: McGINLEY, J., PELLEGRINI, J., and JIULIANTE, Senior Judge.

OPINION BY Judge McGINLEY.

The Honorable Pedro A. Cortes, Secretary of State of the Commonwealth of Pennsylvania (Secretary) preliminarily objects to the petition for review of Bruce L. Smith and all others similarly situated (Smith) which seeks payment from the Secretary for expenses incurred when Smith and others in the same class completed the education requirement for notary publics.

Pursuant to the Notary Public Law (Law),[1] the Secretary is authorized to appoint and commission notaries for terms of four years. On December 9, 2002, the General Assembly substantially amended the Law effective July 1, 2003. Under the amendment, Section 5(c) of the Law, 57 P.S. § 151(c), provides:

> As a condition for the Secretary of the Commonwealth's issuance of a notary commission to an applicant not appointed to the office of notary public as of the effective date of this subsection, a notary applicant must complete at least three (3) hours of approved notary education within the six (6) month period immediately preceding their [sic] application.

The Secretary interpreted Section 5(c) of the Law to mean that those notaries who had been appointed as of the effective date of the amendment were not required to complete the education requirement to maintain their commissions. However, when these notaries applied for reappointment after the effective date of the amendment, the Secretary sought to enforce the education requirement. The Secretary refused to process applications for reappointment by notaries, previously commissioned as of July 1, 2003, without completion of the education requirement.

The Secretary's interpretation of the amendment was challenged in this Court. This Court rejected the challenge. *Tritt v. Cortes*, 836 A.2d 173 (Pa.Cmwlth.2003). However, on June 22, 2004, our Pennsylvania Supreme Court reversed. *Tritt v.*

---

[1]. Act of August 21, 1953, P.L. 1323, *as amended*, 57 P.S. §§ 147–169.

*Cortes,* 578 Pa. 317, 851 A.2d 903 (2004). Our Pennsylvania Supreme Court determined that the amendment limited the education requirement to those applicants not appointed to the office of notary public as of the effective date.

Since the Supreme Court's decision, the Secretary has not required an applicant for reappointment, who was commissioned as of July 1, 2003, to meet the education requirement. However, from July 1, 2003, until June 24, 2004, the Secretary did not process applications for reappointment without evidence of completion of the education requirement, regardless of when the applicant was initially appointed.

Smith was required to comply with the education requirement when he applied for the renewal of his commission. He now petitions for review in this Court in our original jurisdiction and asserts that he is representative of a class of more than 5,000 people who were aggrieved by the Secretary's construction of the amendment. Smith alleges that each member of the class incurred expense in complying with the education requirements. Since the Supreme Court declared the policy invalid, Smith reasons that the expense incurred constituted an unlawful taking for public purpose in violation of the Fifth Amendment of the United States Constitution through the application of the Fourteenth Amendment of the United States Constitution and the corresponding protections of the Pennsylvania Constitution. Smith seeks the payment of just compensation including interest and costs.

The Secretary preliminarily objects and asserts that the petition fails to state a claim under the United States and Pennsylvania Constitutions, that Smith's claim under the Pennsylvania Constitution is barred because there is no private right of action under the Pennsylvania Constitution, and that any claim for damages under state law against the Secretary or the Commonwealth is barred by the doctrine of sovereign immunity.

The Secretary contests that the education requirement constituted an unlawful taking and asserts the petition fails to state a claim because an obligation to pay money does not constitute a taking which requires compensation under the United States or Pennsylvania Constitutions; second, that to the extent the petition for review asserts a claim based on alleged wrongful conduct by the Secretary, that claim is barred by the doctrine of sovereign immunity; and, third, that Smith's petition for damages under Article I, Section 10 of the Pennsylvania Constitution is barred because there is no private right of action under the Pennsylvania Constitution.

In considering preliminary objections, this Court must consider as true all the well-pleaded material facts set forth in the petitioner's petition and all reasonable inferences that may be drawn from those facts. *Mulholland v. Pittsburgh National Bank,* 405 Pa. 268, 271–272, 174 A.2d 861, 863 (1961). Preliminary objections will be sustained only in cases clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. *Werner v. Zazyczny,* 545 Pa. 570, 681 A.2d 1331 (1996).

The Fifth Amendment to the United States Constitution provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case

to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V.

Article 1, Section 10 of the Pennsylvania Constitution provides:

Except as hereinafter provided no person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger, or by leave of the court for oppression or misdemeanor in office. Each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings therein by information filed in the manner provided by law. No person shall for the same offense, be twice put in jeopardy of life or limb; nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured.

Recently, in *In the Matter of Condemnation of the Municipality of Penn Hills,* 870 A.2d 400 (Pa.Cmwlth.2005), this Court recognized that our Pennsylvania Supreme Court has consistently relied upon the decisions of the United States Supreme Court. In *United Artists' Theater Circuit, Inc. v. City of Philadelphia,* 535 Pa. 370, 635 A.2d 612 (1993), our Pennsylvania Supreme Court held that, with respect to the designation of a landmark, the takings clause in the Pennsylvania Constitution does not provide more extensive protection than does the United States Constitution.

█ The Secretary asserts that Smith fails to state a claim upon which relief may be granted because a majority of the United States Supreme Court, in addition to other federal courts, has held that the mere obligation to pay money, like Smith's obligation to pay for an education requirement, fails to constitute a taking.

In *Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), a plurality of the United States Supreme Court concluded that the Coal Industry Retiree Health Benefit Act of 1992 (Coal Act), 26 U.S.C. §§ 9701–9722, was an unconstitutional taking because it required certain coal mine operators to fund future health benefits of former coal mine employees of defunct coal mining companies even though the paying operators never employed the miners. A four Justice plurality determined that the Coal Act's retroactive impact was an unconstitutional taking because it placed a "severe, disproportionate and extremely retroactive burden" on existing coal operators. *Eastern Enterprises,* 524 U.S. at 538, 118 S.Ct. 2131. Justice Kennedy concurred with the result but disagreed with the plurality's conclusion that an obligation to pay money could support a taking. The four Justices who dissented agreed that the Takings Clause was not implicated because the " 'private property' upon which the [Takings] Clause traditionally has focused is a specific interest in physical or intellectual property.... This case involves not an interest in physical or intellectual property, but an ordinary liability to pay money, and not to the Government, but to third parties." *Eastern Enterprises,* 524 U.S. at 554, 118 S.Ct. 2131. In *Eastern Enterprises,* five of the nine Justices of the United States Supreme Court determined that the government imposed obligation to pay money did not constitute a taking.

Similarly, in *United States Shoe Corporation v. United States,* 296 F.3d 1378 (Fed.Cir.2002), *certiorari denied,* 538 U.S. 1056, 123 S.Ct. 2214, 155 L.Ed.2d 1105 (2003), the United States Court of Appeals

for the Federal Circuit determined that the payment of interest on a refund of the Harbor Maintenance Tax was not mandated by either statute or the United States Constitution. Congress enacted the Harbor Maintenance Tax (Tax) as part of the Water Resources Development Act of 1986, 26 U.S.C. §§ 4461–4462. Under the Tax, a 0.125 percent ad valorem tax on commercial cargo was levied for any port use. In 1995, the Court of International Trade determined that the tax imposed on exports was unconstitutional because it violated the Export Clause.[2] The Court of International Trade also determined that interest was due on the refund of the tax payment. The award of interest was stayed until appellate proceedings regarding the constitutionality of the Tax were concluded. The United States Court of Appeals for the Federal Circuit affirmed the unconstitutionality of the Tax, *United States Shoe Corporation v. United States*, 114 F.3d 1564 (Fed.Cir.1997), as did the United States Supreme Court. *United States v. United States Shoe Corporation*, 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998).

The United States asked the United States Court of Appeals for the Federal Circuit to reverse the award of interest, which it did. With respect to whether the prejudgment interest constituted a taking under the Fifth Amendment to the United States Constitution, the Court concluded that it did not:

> U.S. Shoe argues that the Harbor Maintenance Tax was a taking in violation of the Fifth Amendment because it was an unlawful confiscation of its property. We do not agree. The government's act of taxation here was not a per se taking of private property.... Nor is the tax a regulatory taking: 'Regulatory actions requiring the payment of money are not takings'....
>
> A 'reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services'.... Here, the fee was declared unconstitutional because it was proportional to the value of the exported goods and not the actual use of the harbors.... But it was not excessive. Under [*United States v.] Sperry* [, 493 U.S. 52, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989) ], a user fee of 1.5 percent 'does not qualify as a 'taking' by any standard of excessiveness'.... Similarly, purely by its amount, 0.125 percent, ..., the Harbor Maintenance Tax must be considered reasonable. (Citations omitted).

*U.S. Shoe*, 296 F.3d at 1383.

█ This Court agrees with the Secretary that the requirement that notary publics attend and pay for a continuing education class as a condition to renew their commissions did not constitute a taking.[3]

---

**2.** The Export Clause, Article I, Section 9, Clause 5 of the United States Constitution provides that "no Tax or Duty shall be laid on Articles exported from any State."

**3.** Smith argues that the issue here is not the mere obligation to pay money but that a property interest attaches to a notary commission like the property interest that attaches to a professional license and the Secretary's action constituted a regulatory taking. Smith admits that it is difficult to determine whether a regulation goes "too far" so as to be considered a regulatory taking.

Assuming arguendo, that Smith correctly characterizes the Secretary's action as more than an obligation to pay money, this Court still is unpersuaded that a taking occurred. The general rule regarding a regulatory taking is that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Company v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). In *Penn Central Transportation Company v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), the United States Supreme Court stated that the determination of

■ Alternatively, the Secretary preliminarily objects on the basis, that to the extent the petition asserts a claim for wrongful conduct by the Secretary, that claim is barred by the doctrine of sovereign immunity.

Sovereign immunity arises under 1 Pa. C.S. § 2310, which provides in pertinent part:

Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

The exceptions to sovereign immunity for actions against a Commonwealth party are set forth in Section 8522 of the Judicial Code, 42 Pa.C.S. § 8522.[4] A review of the enumerated exceptions reveals that none of them apply here so long as the Secretary acted within the scope of his duties. It is undisputed that the Secretary has the authority to appoint and commission notaries under the Law. The Secretary acted under this authority when he required notaries who sought a renewal of their commission to pay for and attend the education course based on his interpretation of the amended Law. This Court agrees with the Secretary that Smith's claim is barred by sovereign immunity. Assuming arguendo that the Secretary's objection that the payment of money for the education course was not a taking is overruled, this

what constitutes "too far" depends on the facts and circumstances of a particular case. In *Penn Central*, the United States Supreme Court identified the following as significant factors in determining whether a taking has occurred: "the economic impact of the regulation, ... and particularly, the extent to which the regulation has interfered with distinct investment-backed expectations ... [and] the character of the government action." *Penn Central*, 438 U.S. at 124, 98 S.Ct. 2646.

Here, Smith's complaint does not detail any specific facts that would constitute any significant economic impact of the fee on those who were required to attend the required education. As the United States Supreme Court stated in *Penn Central*, "this Court [the U.S. Supreme Court] has dismissed 'taking' challenges on the ground that, while the challenged government action caused economic harm, it did not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute 'property' for Fifth Amendment purposes." *Penn Central*, 438 U.S. at 124–125, 98 S.Ct. 2646. Additionally, the government action was designed to follow the amendment to the Law and promote the education of notary publics for the benefit of the general public. Using the factors articulated in *Penn Central*,

this Court determines that the Secretary's action does not constitute a taking.

4. Under Section 8522(b) of the Judicial Code, 42 Pa.C.S. § 8522(b), the acts by a Commonwealth party which may result in the imposition of liability include: 1) the operation of a motor vehicle in the possession or control of a Commonwealth party; 2) acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel; 3) the care, custody or control of personal property in the possession or control of Commonwealth parties; 4) a dangerous condition of Commonwealth real estate, highways, and sidewalks; 5) a dangerous condition of Commonwealth highways caused by potholes or sinkholes subject to some limitations; 6) the care, custody or control of animals in the possession or control of a Commonwealth party; 7) the sale of liquor at Pennsylvania liquor stores by employees of the Pennsylvania Liquor Control Board to a minor, a person visibly intoxicated, to an insane person, or to any person know as an habitual drunkard, or of known intemperate habit; 8) acts of a member of the Pennsylvania military forces; and 9) the administration, manufacture and use of a toxoid or vaccine not manufactured in the Commonwealth under certain conditions.

Court would sustain this preliminary objection.

■ Accordingly, this Court sustains the preliminary objection of the Board and dismisses Smith's complaint[5] with prejudice.[6]

### ORDER

AND NOW, this 19th day of July, 2005, the preliminary objection of the Honorable Pedro A. Cortes, Secretary of State of the Commonwealth of Pennsylvania, is sustained and the petition of Bruce L. Smith and all others similarly situated is dismissed with prejudice.

---

5. Smith raises a due process argument in his brief as an alternate basis of relief. Smith did not raise this in his petition. Accordingly, this Court need not address it.

6. This Court need not address the remaining preliminary objection because it is moot.