William A. FRY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–1202T.

United States Court of Federal Claims.

Aug. 11, 2006.

William A. Fry, Parks, Arizona, pro se.

Cory A. Johnson, United States Department of Justice, Tax Division, Washington, D.C., counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

### I. RELEVANT FACTS[1]

On November 15, 2005, Plaintiff filed a Complaint in the United States Court of Federal Claims for the return of monies collected by the Internal Revenue Service ("IRS"). *See* Compl. at 1, 4. Plaintiff's official tax record indicates an outstanding tax liability of $14,835.00 for the taxable year 1995.[2] *See* Gov't Mot. Dis. Ex. 1–10. By October 23, 2000, assessed fines, penalties, and interest increased Plaintiff's outstanding liability for the taxable year 1995 to $27,930.73. *Id.*

In 2005, the IRS executed a series of levies to collect Plaintiff's outstanding 1995 tax liability. *Id.* On July 27, 2005, the IRS levied $192.45 per month for five months from Plaintiff's Social Security benefit. *Id.* On August 29, 2005, the IRS levied $2,915.23 from Plaintiff's Public Safety Personnel Retirement System of Arizona ("PSPRS") benefit. *See* Compl. ¶ 2.7. On September 8,

---

1. The relevant facts recited herein were derived from: the November 15, 2005 Complaint ("Compl.") and exhibits thereto ("Compl.Ex."); Defendant ("the Government")'s March 3, 2006 Motion to Dismiss ("Gov't Mot. Dis.") and exhibits thereto ("Gov't Mot. Dis. Ex."); Plaintiff's March 29, 2006 Verified Response ("Pl.Resp."); the Government's April 4, 2006 Reply Brief ("Gov't Reply"); and Plaintiff's April 27, 2006 Second Verified Response ("Pl. Second Resp.").

2. For the taxable years 1996, 1997, 1998, 1999, 2000, and 2002, Plaintiff also had outstanding tax liabilities ranging from $21,944 to $40,066 per year. *See* Gov't Mot. Dis. Ex. 2–6, 8. Plaintiff did not file a tax return for the taxable years 2001, 2003, and 2004. *Id.* at 7, 9–10. Plaintiff denies having an outstanding tax liability for taxable years 1995 through 2004. *See* Pl. Second Resp. at 3–4. The Government, however, has notified Plaintiff of outstanding tax liabilities totaling $214,830.21. *See* Compl. ¶ 3.3. Because the court does not have jurisdiction over Plaintiff's claims, the merits of Plaintiff's tax liability has not been considered.

2005, the IRS levied $58.59 from Plaintiff's Bank One account. *See* Compl. Ex. D. On September 28, 2005, the IRS levied $48.53 from Plaintiff's Wells Fargo Bank account. *See* Compl. Ex. C.

On December 5, 2005, the Government stopped levying Plaintiff's Social Security benefit and refunded $384.90. *See* Gov't Mot. Dis. Ex. 1 (indicating that the refund was due to "10–07–2005 LEGAL/BANK-RUPTCY SUIT PENDING").

To date, the IRS has collected the following amounts from the Plaintiff:

| Source of Funds | Amount |
|---|---|
| Public Safety Personnel Retirement System | $2,915.23 |
| Social Security | $ 577.35 [3] |
| Bank One | $ 58.59 |
| Wells Fargo Bank | $ 48.53 |
| Total: | $3,599.70 |

See Gov't Mot. Dis. at 2.

As of December 20, 2005, Plaintiff's outstanding tax balance was $24,526.15, because Plaintiff's official tax record was not updated to reflect either the $58.59 levy from the Bank One account or the $48.53 levy from the Wells Fargo Bank account. *See* Gov't Mot. Dis. Ex. 1.

## II. PROCEDURAL BACKGROUND

On November 15, 2005, Plaintiff filed a *pro se* Complaint in the United States Court of Federal Claims, identifying as defendants: the United States of America, the PSPRS, the Social Security Administration, Wells Fargo Bank, and Bank One. *See* Compl. at 1–2. On February 22, 2006, the court issued an Order to clarify that the Government is the proper defendant. *See* Ct. Order, *Fry v. United States,* No. 05–1202T (Fed.Cl. Feb.22, 2006).

The Complaint has seven causes of action alleging that the IRS levies: (1) constituted a "Bill of Attainder" in violation of the Article I, Section 9, Clause 3 of the United States Constitution; (2) deprived Plaintiff of personal property in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (3) deprived Plaintiff of personal property in violation of the Ninth Amendment to the United States Constitution; (4) constituted an illegal exaction in violation of the Tenth Amendment to the United States Constitution; (5) deprived Plaintiff of personal property in violation of the Tenth Amendment to the United States Constitution; (6) deprived Plaintiff of "labor property" in violation of the Fifth Amendment to the United States Constitution; and (7) violated the Sixteenth Amendment to the United States Constitution. *See* Compl.

On March 3, 2005, the Government filed a Motion to Dismiss for a lack of subject matter jurisdiction. *See* Gov't Mot. Dis. On March 27, 2006, Plaintiff filed a Verified Response to the Government's Motion. *See* Pl. Resp. On April 5, 2006, the Government filed a Reply. *See* Gov't Reply. On April 27, 2006, Plaintiff filed a Second Verified Response to the Government's Motion. *See* Pl. Second Resp.

On July 18, 2006, Plaintiff filed a Motion to Compel Defendant to Answer the Complaint. *See* Pl. Mot. to Compel. On July 28, 2006, the Government filed a Response to Plaintiff's Motion to Compel. *See* Gov't Resp.

## II. DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

---

**3.** Although Plaintiff's official tax record indicates that the IRS seized Plaintiff's Social Security benefit for three months for a total of $577.35, the Complaint alleges only two months of plaintiff's Social Security benefit were collected for a total of $384.90. *Compare* Gov't Mot. Dis. Ex. 1, *with* Compl. ¶ 2.6.

Therefore, in order to pursue a substantive right, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages for the court to have jurisdiction. *See Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); *see also Roth v. United States,* 378 F.3d 1371, 1384 (Fed.Cir.2004) ("Because the Tucker Act itself does not provide a substantive cause of action, however, a plaintiff must find elsewhere a money-mandating source upon which to base a suit."); *Khan v. United States,* 201 F.3d 1375, 1378 (Fed.Cir.2000) ("[T]he plaintiff 'must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.' ") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998)). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell II,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580; *see also United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).[4] In the "parlance of the Tucker Act cases, that source must be 'money-mandating.' " *Id.*

To determine whether a provision is money-mandating, "the court should entertain and decide the jurisdictional and merits test in a single step in which the trial court determines both the question of whether the provision provides the predicate for its jurisdiction, and lays to rest the question of whether the statute on its merits provides a money-mandating remedy." *Wopsock v. Natchees,* 454 F.3d 1327, 1331 (Fed.Cir.2006) (citing *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) *(en banc)).* "If the court's conclusion is that the source *as alleged and pleaded* is not money-mandating, the court shall so declare, and shall dismiss for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." *Fisher,* 402 F.3d at 1173 (emphasis added).

In addition, before the United States Court of Federal Claims can exercise jurisdiction over a tax refund claim, the plaintiff must first file a tax refund request with the IRS:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, *until a claim for refund or credit has been duly filed with the Secretary,* according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added).

**B.** ***Pro Se* Plaintiff Pleading Requirements.**

In the United States Court of Federal Claims, the pleadings of a *pro se* plaintiff are held to a less stringent standard than those of the litigants represented by counsel. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)) *(pro se* complaints, "however inartfully pleaded," are held to "less

---

4. In considering the money-mandating requirement of the Tucker Act, the United States Supreme Court has held that: "This 'fair interpretation' rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity.... It is enough, then, that a statute creating a Tucker Act right be *reasonably amendable* to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be 'lightly inferred' ... a *fair inference* will do." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472–73,

123 S.Ct. 1126, 155 L.Ed.2d 40 (2003). The United States Court of Appeals for the Federal Circuit has recognized, but not resolved, that the United States Supreme Court, in restating the money-mandating test, may have made it less stringent. *See Fisher,* 402 F.3d at 1173–74 (quoting *White Mountain,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40). For the purposes of this case, however, under either interpretation, the court does not have jurisdiction over the claims alleged in this Complaint. *Id.* at 1174.

stringent standards than formal pleadings drafted by lawyers"). Indeed, it has been the tradition of the court to examine the record "to see if [a *pro se]* plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285 (1969).

### C. Standard Of Review.

A challenge to the "court's general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999); *see also Fisher,* 402 F.3d at 1173 ("If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act."); RCFC 12(b)(1).

In deciding a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). Plaintiff, however, bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

### D. The Court's Resolution Of The Government's Motion To Dismiss.

#### 1. The United States Court Of Federal Claims Does Not Have Jurisdiction Under 28 U.S.C. §§ 1331, 1340, 1346 or 26 U.S.C. §§ 6330, 7429.

##### a. The Government's Argument.

The Government argues that several of the statutory bases for jurisdiction alleged in the Complaint are clearly inapplicable to the present case. *See* Gov't Mot. Dis. at 2–3. Specifically, the Government argues that 28 U.S.C. §§ 1331, 1340 are inapplicable, because they confer jurisdiction only on United States District Courts. *Id.* Similarly, the Government argues that 26 U.S.C. §§ 6330, 7429 are inapplicable, because they confer jurisdiction only on United States District Courts and the United States Tax Court. *Id.* The Government also argues that the Little Tucker Act, 28 U.S.C. § 1346, is inapplicable, because it confers jurisdiction to hear tax refund claims on United States District Courts, not the United States Court of Federal Claims. *See* Gov't Reply at 5 ("[28 U.S.C. § 1346], however, grants jurisdiction to the district courts, not this court, to hear tax refund suits.").

##### b. Plaintiff's Response.

Plaintiff's Verified Response and Second Verified Response do not respond to the Government's argument that neither 28 U.S.C. §§ 1331, 1340, nor 26 U.S.C. §§ 6330, 7429 provide jurisdiction over the claims alleged. *See* Pl. Resp. Instead, Plaintiff argues that section 1346(a)(1), a statute not alleged in the Complaint, provides the court with jurisdiction, because it confers "concurrent" jurisdiction on the United States Court of Federal Claims and United States District Courts to hear tax refund claims. *Id.* at 4–5.

##### c. The Court's Resolution.

Sections 1331 [5] and 1340 [6] of Title 28 of the United States Code only confer jurisdiction on United States District Courts. *See* 28 U.S.C. §§ 1331, 1340. Similarly, section

---

**5.** Section 1331 provides, in relevant part, that:
 The *district courts* shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
 28 U.S.C. § 1331 (emphasis added).

**6.** Similarly, section 1340 provides, in relevant part, that:

The *district courts* shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade.
28 U.S.C. § 1340 (emphasis added).

6330 [7] and section 7429 [8] only confer jurisdiction on United States District Courts and the United States Tax Court. *See* 26 U.S.C. §§ 6330, 7429. The United States Court of Federal Claims is not a "district court," within the meaning of either 28 U.S.C. §§ 1331, 1340 or 26 U.S.C. §§ 6330, 7429. *See Crocker v. United States*, 125 F.3d 1475, 1476 (Fed.Cir.1997). Likewise, the United States Court of Federal Claims is not the United States Tax Court. *See Algonac Mfg. Co. v. United States*, 428 F.2d 1241, 1250 (Ct.Cl. 1970) (differentiating between the Tax Court and the Court of Claims (now the United States Court of Federal Claims)).

Similarly, section 1346(a)(1) confers jurisdiction only on United States District Courts:

> (a) The *district courts* shall have *original jurisdiction, concurrent* with the United States Court of Federal Claims, of:
>
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the intern-revenue laws[.]

28 U.S.C. § 1346(a)(1) (emphasis added).

Although section 1346(a)(1) cross-references the jurisdiction of the United States Court of Federal Claims, it only confers jurisdiction on United States District Courts. *See Hinck v. United States*, 64 Fed.Cl. 71, 76 (2005), *aff'd*, 446 F.3d 1307 (Fed.Cir.2006) (recognizing that the reference to the United States Court of Federal Claims in section 1346(a)(1) is merely a cross-reference to the Tucker Act); *see also Doe v. United States*, 372 F.3d 1308, 1312 (Fed.Cir.2004) (distinguishing the Little Tucker Act, 28 U.S.C. § 1346, from the Tucker Act, 28 U.S.C. § 1491).

Therefore, the court does not have jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331, 1340, 1346(a)(1) or 26 U.S.C. §§ 6330, 7429.

**2. The United States Court of Federal Claims Does Not Have Jurisdiction Over Tort Claims.**

The Complaint alleges numerous claims of fraud, including "mail fraud," "constructive fraud," "misrepresentation of material facts" and "conspiracy to defraud." *See* Compl. at 1. These claims, however, sound in tort. The United States Court of Federal Claims' jurisdiction does not extend to cases sounding in tort. *See* 28 U.S.C. § 1491(a) ("[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim ... for liquidated or unliquidated damages *in cases not sounding in tort*." (emphasis added)); *see also Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir. 1997) (holding that the United States Court of Federal Claims lacks jurisdiction over claims sounding in tort, including fraud). Jurisdiction to hear such claims exclusively is conferred on United States District Courts, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Therefore, the court does not have jurisdiction over Plaintiff's tort claims.

**3. The United States Court of Federal Claims Does Not Have Jurisdiction Over The Complaint's Non–Money–Mandating Claims.**

**a. The Government's Argument.**

The Government argues that, with the exception of the Fifth Amendment Just Com-

---

7. Section 6330 provides, in relevant part, that:
 The person may, within 30 days of a determination under this section, appeal such determination
 (A) to *the Tax Court (and the Tax Court shall have jurisdiction* with respect to such matter); or
 (B) if the Tax Court does not have jurisdiction of the underlying tax liability, to a *district court of the United States.*
 26 U.S.C. § 6330(d) (emphasis added).

8. Section 7429 provides, in relevant part, that:

 (A) In general.—Except as provided in subparagraph (B), the *district courts of the United States* shall have exclusive jurisdiction over any civil action for a determination under this subsection.
 Tax Court.—[under specific circumstances] then the *Tax Court* also shall have jurisdiction over any civil action for a determination under this subsection with respect to all the taxes and taxable periods included in such written statement.
 26 U.S.C. § 7429(b)(2) (emphasis added).

pensation Clause claim, Plaintiff's remaining claims are based on non-money-mandating constitutional provisions that are not within the court's jurisdiction. *See* Gov't Mot. Dis. at 3–4. Specifically, the Government argues that the Fourth, Ninth, Tenth, Fourteenth, and Sixteenth Amendments to the United States Constitution as well as the Due Process Clause of the Fifth Amendment and Bill of Attainder Clause of the United States Constitution do not "mandate the payment of money damages as compensation." *Id.* In addition, the Government argues that section 6331 of Title 26 of the United States Code is not money-mandating. *See* Gov't Reply at 4.

### b. Plaintiff's Response.

Although acknowledging that claims alleged in the United States Court of Federal Claims must be based on money-mandating provisions to invoke jurisdiction under the Tucker Act, 28 U.S.C. § 1491, Plaintiff does not contend that the constitutional provisions alleged in the Complaint are money-mandating. *See* Pl. Resp. Instead, Plaintiff reasons that 26 U.S.C. § 6331 is money-mandating. *See* Pl. Resp. at 2–4; Pl. Second Resp. at 5–6. In addition, Plaintiff asserts a non-frivolous allegation that a constitutional provision, statute, or regulation will suffice to survive a motion to dismiss for lack of jurisdiction. *See* Pl. Resp. at 2–3; Pl. Second Resp. at 4–5 (citing *Gollehon Farming v. United States,* 207 F.3d 1373 (Fed.Cir.2000)).[9]

### c. The Court's Resolution.

### i. Section 6331 Is Not Money–Mandating.

■ Sections 6331(a) and (b) provide the IRS Commissioner with authority to collect unpaid tax and define the term "levy":

(a) Authority of Secretary. If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except

such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

(b) Seizure and sale of property. The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

26 U.S.C. § 6331(a), (b).

No language in either subsection fairly can be interpreted as money-mandating. Therefore, the court does not have jurisdiction over Plaintiff's section 6331 claims.

### ii. Article I, Section 9, Clause 3 To The Constitution Is Not Money–Mandating, As Alleged And Pled.

The Complaint alleges that actions by the IRS violate the Bill of Attainder Clause of the United States Constitution. *See* Compl. ¶¶ 3.1–3.5 (alleging that the IRS's unlawful seizure of Plaintiff's monies violates the Bill of Attainder Clause).

■ A bill of attainder, however, is "a *legislative act* that applies either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Lovett,* 328 U.S. 303, 315, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946) (emphasis added). Therefore, the Bill of Attainder Clause applies only to legislative action. *See United States v. Brown,* 381 U.S. 437, 444, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965) ("The authors of the Federalist Papers took the position that although under some systems of government (most notably the one from which the United States had just broken), the Executive Department is the branch most likely to forget the bounds of its authority, 'in a representative republic * * *

***

**9.** *Fisher,* however, expressly overruled *Gollehon's* "non-frivolous allegation" test for invoking jurisdiction. *See Fisher,* 402 F.3d at 1172 (hold-

ing that making a "non-frivolous" allegation is insufficient to survive a motion to dismiss for lack of jurisdiction).

where the legislative power is exercised by an assembly * * * which is sufficiently numerous to feel all the passions which actuate a multitude; yet not so numerous as to be incapable of pursuing the objects of its passions * * *,' barriers had to be erected to ensure that the legislature would not overstep the bounds of its authority and perform the functions of the other departments. The Bill of Attainder Clause was regarded as such a barrier." (internal quotations omitted)); *see also Korte v. Office of Pers. Mgmt.,* 797 F.2d 967, 972 (Fed.Cir.1986) ("[T]he Bill of Attainder Clause was intended 'as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply-trial by legislature.' The clause is a limitation on the authority of the legislative branch." (quoting *Brown,* 381 U.S. at 442, 85 S.Ct. 1707)).

No court has resolved whether the Bill of Attainder Clause is money-mandating. Arguably, this Clause is not money-mandating, because it contains no language directly related to a pecuniary interest. *See* U.S. Const. art. I, § 9, cl. 3. In that respect, it is distinguishable from the Export Clause [10] and the Judges' Compensation Clause,[11] that the United States Court of Appeals for the Federal Circuit has held to be money-mandating, in part, because these Constitutional provisions contain pecuniary language. *See Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1374–75 (Fed.Cir.2000) ("[B]oth clauses speak in absolute and unconditional terms and both protect pecuniary interests"). Moreover, the purpose of the Bill of Attainder Clause was to protect against the punitive confiscation of "property" by the sovereign. *See Fletcher v. Peck,* 10 U.S. (6 Cranch) 87, 138, 3 L.Ed. 162 (1810) ("A bill of attainder may affect the life of an individual, or may confiscate his *property,* or may do both." (emphasis added)); *see also Mark Strasser, Ex Post Fact Laws, Bills of Attain-*

der, and the Definition of Punishment: On DOMA, the Hawaii Amendment, and Federal Constitutional Constraints, 48 SYRACUSE L.REV. 227, 238–39 (1998).

The issue before the court, however, is not whether the Bill of Attainder Clause mandates the payment of money when Congress violates the Clause by enacting a bill of attainder. Instead, the issue is whether the Bill of Attainder Clause, as alleged and pled, is money-mandating. *See Fisher,* 402 F.3d at 1173 ("If the court's conclusion is that the source as *alleged and pleaded* is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction[.]" (emphasis added)). The Complaint, however, does not allege any requisite legislative act to invoke the Bill of Attainder Clause. Therefore, in this case, the court does not have jurisdiction over Plaintiff's Bill of Attainder Clause claim.

### iii. The Fourth Amendment, The Due Process Clause Of The Fifth Amendment, Ninth Amendment, And Tenth Amendment To The United States Constitution Are Not Money–Mandating.

As a matter of law, the Fourth Amendment's prohibition on unreasonable search and seizure and the Due Process Clause of the Fifth Amendment are not money-mandating. *See LaChance v. United States,* 15 Cl.Ct. 127, 130 (1988) (holding that the Fourth Amendment does not mandate the payment of money by the United States) (citing *Shaw v. United States,* 8 Cl.Ct. 796, 800 (1985)); *see also Collins v. United States,* 67 F.3d 284, 288 (Fed.Cir.1995) (holding that the Due Process Clause does not obligate the Government to pay money damages).

Likewise, the Ninth Amendment and Tenth Amendment are not money mandating. The Ninth Amendment provides that:

> The enumeration in the Constitution of certain rights shall not be construed to

---

**10.** The Export Clause to the United States Constitution provides: "no Tax or Duty shall be laid on Articles exported from any state." U.S. CONST. art I, § 9, cl. 5.

**11.** The Judges' Compensation Clause to the United States Constitution provides: "The Judges,

both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." U.S. CONST. art. III, § 1.

deny or disparage others retained by the people.

U.S. Const. amend. IX.

The Tenth Amendment provides that:

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

U.S. Const. amend. X. Nothing in the language of either Amendment "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Mitchell II*, 463 U.S. at 216, 103 S.Ct. 2961.

Therefore, the court does not have jurisdiction over Plaintiff's Fourth Amendment, Fifth Amendment Due Process Clause, Ninth Amendment, or Tenth Amendment claims.

### iv. Article I, Section 10, Clause 1 And The Fourteenth Amendment To The United States Constitution Are Not Money–Mandating.

 The Contracts Clause, Article I, Section 10, Clause 1 of the United States Constitution and the Fourteenth Amendment to the United States Constitution are only limitations on state action. *See Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1577 (Fed.Cir.1997) (holding that the Contracts Clause, Article I, Section 10, Clause 1 to the United States Constitution, does not apply to the actions of the federal government); *see also San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 542 n. 21, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (holding the Fourteenth Amendment does not apply to the actions of the federal government). Accordingly, neither of these constitutional provisions mandate the payment of money on the basis of federal action. *See Testan*, 424 U.S. at 400, 96 S.Ct. 948 (citing *Eastport S.S. Co. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967)) (the asserted entitlement to money damages depends upon whether any federal statute "can be fairly interpreted as mandating compensation *by the Federal Government* for the damage sustained" (emphasis added)). Therefore, the court does not have jurisdiction over the Plaintiff's Arti-cle I, Section 10, Clause 1 or Fourteenth Amendment claims.

### 4. The United States Court of Federal Claims Does Not Have Jurisdiction Over A Just Compensation Clause Claim Based On Illegal Taxation.

#### a. The Government's Argument.

Although the Government acknowledges that a claim asserted under the Just Compensation Clause to the United States Constitution is money-mandating, the Government argues that the court does not have jurisdiction over this claim, because the appropriate cause of action is a direct challenge to the tax levy. *See* Gov't Mot. Dis. at 3–4.

#### b. Plaintiff's Response.

Plaintiff offers no response to the Government's argument.

#### c. The Court's Resolution.

 The United States Court of Federal Claims has jurisdiction over claims asserted under the Just Compensation Clause of the Fifth Amendment to the United States Constitution. *See Murray v. United States*, 817 F.2d 1580, 1583–84 (Fed.Cir.1987) ("[a]lthough the Claims Court has jurisdiction over a[t]aking claim, the more difficult question is whether the [plaintiff has] stated such a claim in this case"). To invoke the court's jurisdiction, the plaintiff must admit that the Government's taking was authorized, because an actionable "takings" can only result from authorized federal actions. *See Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1329–32 (Fed.Cir.2006) (holding that, in a takings case, the court assumes that the underlying action was lawful and decides only whether the governmental action in question constituted a taking for which compensation must be paid); *see also Blanchette v. Connecticut General Ins. Corp.*, 419 U.S. 102, 127, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) (holding that the federal action at issue must be authorized); *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed.Cir.2001) (explaining that "an uncompensated taking and an unlawful government action constitute

'two separate wrongs [that] give rise to two separate causes of action,' and that a property owner is free either to sue in district court for asserted improprieties committed in the course of the challenged action or to sue for an uncompensated taking in the [United States] Court of Federal Claims") (quoting *Del–Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1364 (Fed.Cir.1998)); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed.Cir.1993) ("[C]laimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act."); *Florida Rock Indus., Inc. v. United States*, 791 F.2d 893, 898–899 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987) (recognizing that takings cases are based on the proper exercise of statutory and regulatory authority). Unauthorized acts by federal officials are torts, not takings. *See Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989) (claims based on unauthorized acts (wrongdoing) by the [G]overnment officials sound in tort); *see also* 28 U.S.C. 1491(a) ("the United States Court of Federal Claims shall have jurisdiction upon any claim ... in cases *not sounding in tort*." (emphasis added)).

▮ Moreover, the lawful exercise of the Government's tax collection powers does not amount to a taking. *See U.S. Shoe Corp. v. United States*, 296 F.3d 1378, 1383 (Fed.Cir. 2002) (the ruling that imposition of the federal income tax does not constitute a taking under the Fifth Amendment); *see also Branch ex rel. Me. Nat'l Bank v. United States*, 69 F.3d 1571, 1576–77 (Fed.Cir.1995) ("enforcement action [of the constitutional tax assessment], including seizure of the property, could not be challenged as a taking"); *see also First Atlas Corp. v. United States*, 23 Cl.Ct. 137, 141 (1991), *aff'd per curiam*, 954 F.2d 733 (Fed.Cir.1992) (concluding that the filing of a notice of a lien, standing alone, does not constitute a taking); *Castillo Morales v. United States*, 19 Cl.Ct. 342, 345 (1990) (holding that the court does not have jurisdiction over takings claims, because "where [...] a taxpayer disputes an IRS levy on its property, the appropriate course of action is a direct challenge of the levy, not the prosecution of a [F]ifth [A]mendment claim").

▮ In this case, the Complaint alleges that the IRS's execution of levies to collect an outstanding tax liability was not authorized. *See* Compl. Therefore, the Complaint has failed to invoke the court's jurisdiction over the Just Compensation Clause claim. *See Rith*, 247 F.3d at 1365. Assuming *arguendo* that Plaintiff conceded that the IRS's actions were authorized, nevertheless, as a matter of law, the United States Court of Appeals for the Federal Circuit has held that a tax is not a taking. *See U.S. Shoe Corp.*, 296 F.3d at 1383. Therefore, the court does not have jurisdiction over the Plaintiff's Fifth Amendment claim.

**5. The United States Court of Federal Claims Does Not Have Jurisdiction Over Plaintiff's "Illegal Seizure Of Property" Claim.**

**a. The Government's Argument.**

The Government argues that the Complaint's "illegal seizure of property claim" is a species of tax refund claim over which the court does not have jurisdiction, because the statutory prerequisites under Section 7422 of Title 26 of the United States Code have not been met, *i.e.*, full payment of the tax at issue and filing the claim for refund with the IRS. *See* Gov't Mot. Dis. at 4–5 (citing 26 U.S.C. § 7422(a)).

**b. Plaintiff's Response.**

Plaintiff responds that the "illegal seizure of property claim" cannot be a tax refund claim, because the Government has not established a tax liability or that payment thereof was voluntary. *See* Pl. Second Resp. at 2–3. Instead, Plaintiff argues that the "illegal seizure of property claim" is either an illegal exaction or a criminal act. *Id.; see also* Compl. at 18 ("Defendants Deprived Plaintiff of his Personal Property in Violation of their Limited Statutory Authority").

**c. The Court's Resolution.**

Regardless of whether the court construes the Plaintiff's "illegal seizure of property

claim" as a traditional tax refund claim, as an illegal exaction, or as a criminal allegation, the court does not have jurisdiction.

■ A tax refund claim is a classic example of an illegal exaction claim and invokes Tucker Act jurisdiction by alleging that taxes have been improperly collected or withheld by the Government for which the remedy is a refund. *See, e.g., City of Alexandria v. United States*, 737 F.2d 1022, 1028 (Fed.Cir.1984); *see also* 28 U.S.C. § 1491(a); *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1558 (Fed.Cir.1997) (reaffirming the jurisdiction of the United States Court of Federal Claims over a suit concerning a federal tax refund). To invoke Tucker Act jurisdiction over a tax refund claim, however, a plaintiff must meet three jurisdictional prerequisites. First, a plaintiff must make full payment of the tax, penalties, and interest at issue under the so called "full payment rule." *See Shore v. United States*, 9 F.3d 1524, 1527 (Fed.Cir. 1993) (holding that the full payment rule is applicable to refund suits in the Court of Federal Claims); *see also Flora v. United States*, 362 U.S. 145, 163, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) ("[F]ull payment of an illegal assessment is a condition upon the jurisdiction of a District Court to entertain a suit for refund[.]"). Second, a plaintiff must file a claim for refund with the IRS for the amount of tax at issue. *See* 26 U.S.C. § 7422(a) (stating that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, . . ., until a claim for refund or credit has been duly filed with the Secretary . . ."). Third, a plaintiff is required to provide the amount, date, and place of each payment to be refunded, as well as a copy of the refund claim, when filing a refund suit in the United States Court of Federal Claims. *See* RCFC 9(h)(6). Failure to plead that a timely refund claim has been filed, even in *pro se* actions, deprives the United States Court of Federal Claims of jurisdiction. *See Wozniak v. United States*, 618 F.2d 119 (Ct. Cl.1979) (holding that even in a *pro se* tax suit a timely claim for refund must be filed to invoke the court's jurisdiction).

■ Plaintiff has not satisfied the prerequisites necessary to invoke the court's jurisdiction over tax refund claims. Plaintiff's partial payment of a tax liability through levies totaling $3,599.70 on a deficiency of $27,930.73 does not meet the full payment prerequisite. *See Flora v. United States*, 357 U.S. 63, 75–76, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958) (holding that the full payment rule literally requires full, not partial, payment and rejecting the argument that a part-payment remedy is necessary when a taxpayer is too poor to pay the full amount of the tax). Moreover, Plaintiff has failed to plead that, before instituting the present action, a timely administrative refund claim was filed with the IRS. Therefore, the prerequisites of section 7422(a) and RCFC 9(h)(6) have not been met.

■ Assuming *arguendo*, as Plaintiff argues, that the "illegal seizure of property" claim is not a tax refund claim, but an illegal exaction, the court, nevertheless, does not have jurisdiction.

In *Norman v. United States*, 429 F.3d 1081 (Fed.Cir.2005), the United States Court of Appeals for Federal Circuit explained that:

An "illegal exaction," as that term is generally used, involves money that was "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." An illegal exaction involves a deprivation of property without due process of law, in violation of the Due Process Clause of the Fifth Amendment to the Constitution. The United States Court of Federal Claims ordinarily lacks jurisdiction over due process claims under the Tucker Act, section 1491, but has been held to have jurisdiction over illegal exaction claims "when the exaction is based upon an asserted statutory power." To invoke Tucker Act jurisdiction over an illegal exaction claim, *a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by "necessary implication," that "the remedy for its violation entails a return of money unlawfully exacted."*

*Id.* at 1095 (emphasis added) (citations and quotations omitted).

Plaintiff bears the burden of demonstrating "that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Id.* at 1095. Plaintiff's bare allegation that the Government exceeded an unspecified "Limited Statutory Authority" does not satisfy this burden.

Finally, if Plaintiff's unspecified illegal exaction claim is intended to allege that the IRS's tax collection was a criminal act, the court does not have jurisdiction. *See* 28 U.S.C. § 1491(a).

Therefore, the court does not have jurisdiction over Plaintiff's "illegal seizure of property claim."

## IV. CONCLUSION

For the aforementioned reasons, the Government's March 3, 2006 Motion to Dismiss is granted. Plaintiff's Motion to Compel is, therefore, denied, as moot. The Clerk of the United States Court of Federal Claims is directed to dismiss the November 15, 2005 Complaint, without prejudice.

**IT IS SO ORDERED.**