Steve **PEREIRA**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 08–342C.

United States Court of Federal Claims.

Nov. 14, 2008.

Steve Pereira, pro se.

Carrie A. Dunsmore, Trial Attorney, Martin F. Hockey, Jr., Assistant Director, Jeanne E. Davidson, Director, Gregory G. Katsas, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

Plaintiff Steve Pereira seeks reinstatement to his employment with the United States Postal Service along with damages for an alleged violation of 28 U.S.C. § 1875, which precludes adverse employment action based upon the employee's jury service. Because there is no jurisdiction in this Court, and a transfer to another jurisdiction would be futile, the complaint will be dismissed.

On May 9, 2008, plaintiff Steve Pereira filed a complaint alleging the following facts, which are taken as true for the purposes of this motion. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Plaintiff was employed as a postal inspector by the southwest division of the United States Postal Service (USPS). Compl. ¶ 5 (docket entry 1). On May 30, 2000 he filed a equal opportunity complaint charging that his supervisors "engaged in racial discrimination in violation of Title VII for failure to promote." ¶ 7.

On February 23, 2001, the team leader of the southwest division contacted plaintiff and asked that he provide a physical address, which plaintiff declined to do. *Id.* ¶ 10. On February 27, the team leader once again asked plaintiff for a physical address "so he could verify where Plaintiff parked his official vehicle overnight." Plaintiff emailed the supervisor an address, and on the same day his drive-home authorization was rescinded. ¶ 11. Although it is not relevant here, plaintiff contends there is no regulation requiring that he disclose an address for that purpose and protests the USPS's refusal to reinstate his drive-home privileges. ¶ 11, 14–17.

The Postal Service noticed some discrepancies in Mr. Pereira's records, notably that his employment records used a Texas address, while a supervisor allegedly knew "that Plaintiff was living outside the 50 mile radius of his office." ¶ 12. The Postal Service became concerned that plaintiff was committing tax fraud, specifically that he was evading Oklahoma state income taxes. ¶¶ 9, 12. USPS officials requested information from other entities regarding plaintiff's driver's license and the address at which he received utility service. ¶¶ 18–20. On March 26, 2001, plaintiff received a letter from his supervisor "inform[ing] plaintiff that plaintiff is a resident of Oklahoma and for him to obtain an Oklahoma drivers' license." ¶ 25. Plaintiff subsequently received a "letter of warning" from the USPS for failing to provide a physical address and complete certain forms; plaintiff asserts that he had previously complied with those requests. ¶ 29.

In April of 2001, plaintiff was placed on administrative leave, and in May was ordered to undergo a psychiatric evaluation. ¶¶ 30, 32. The USPS Office of Inspections continued to investigate the possibility of tax evasion, and concluded in May of 2001 that plaintiff was (incorrectly) using a Texas address for federal income tax purposes, and had failed to file Oklahoma tax returns in 1998 or 1999. ¶ 34. The inspector, Ms. Czupor, also attempted to interview Pereria's ex-wife, searched the desk and cabinets in his office, traveled to Tyler, Texas to interview a woman whose address Pereira was using, and obtained copies of both plaintiff's divorce decree and settlement agreement and his Arkansas real estate records. ¶¶ 36–40.

In June of 2001, Czupor obtained a copy of a jury questionnaire Periera had completed, along with his Texas voters' registration information. ¶¶ 41–42. Although Czupor believed plaintiff would be indicted for tax fraud, the Smith County, Texas district attorney declined to prosecute. ¶¶ 44–46. By letter dated August 14, 2001, the Oklahoma Tax Commission informed plaintiff that he was under criminal investigation for failure to file Oklahoma income tax returns. ¶ 48. Plaintiff met with an official from the Oklahoma Tax Commission to show them the address on his

W–4s for the pertinent years, arguing that he did not need to file tax returns in Oklahoma. ¶¶ 51–52. In November of 2001, the U.S. Attorney's office "declined prosecution on the matters that were presented to them." ¶ 54. USPS officials allegedly became concerned that they were at the mercy of other agencies who "may not have the same sense of urgency as we do" and asked whether there was "anything we can do NOW." ¶¶ 52, 54.

In January of 2002, inspector Czupor issued a report resulting from her investigation of plaintiff's conduct. ¶ 55. When plaintiff made his "daily telephone call" to the USPS, he was asked to come into the Tulsa office to explain his side of the story to Thomas Brady, the assistant inspector in charge of the southwest division. ¶¶ 7, 58. At the meeting, plaintiff read the report and "quickly realized that Brady had no intention to hear him." ¶ 59. Plaintiff challenged the USPS for releasing information to the Oklahoma Tax Commission and "informed Brady his divorce documents were none of their business," after which he was "escorted out of the office." ¶ 59.

When plaintiff made his next daily telephone call, he was again transferred to Brady, who "stated that he was not satisfied with Plaintiff's responses to the investigative report and was going to propose adverse action." ¶ 60. Brady then issued a notice of proposed adverse action, which plaintiff protested on the grounds that Brady was not his immediate supervisor. ¶ 61. After a number of communications back and forth, ¶¶ 62–66, on May 2, 2002, the USPS sent plaintiff a letter informing him he "would be removed from his employment with the Postal Service effective May 10, 2002." ¶ 69. The first specification in the letter asserted that plaintiff "provid[ed] false information in the completion of a **Texas Jury Questionnaire.**" ¶ 69 (emphasis in original).

Plaintiff appealed the removal, ¶¶ 70–71, and on September 6, 2002, the USPS upheld its decision. ¶ 75. This ruling noted that Pereira was "also charged with violating the Inspection Service Code of Ethics in that you knowingly provided false information in connection with the completion of a **jury questionnaire** for the State of Texas. I find

sufficient grounds for sustaining this charge." ¶ 75 (emphasis in original). Plaintiff appealed this decision, but the USPS upheld it and advised him he "had no further right of administrative appeal." ¶¶ 76–78.

An "EEOC hearing" was held on April 28 and 29, 2003 at which various USPS officials testified, ¶¶ 79–82, and depositions were subsequently taken, ¶¶ 83–84. Plaintiff's complaint recounts various facts arising from the hearing and the depositions, but none of these are relevant to the present issue.

In November of 2003, plaintiff sued the Postmaster General for discrimination under Title VII of the Civil Rights Act, alleging, among other things, that the investigation into his residence was retaliation for his EEO complaint. *Pereira v. Potter,* 3:03–cv–2684R, 2003 WL 23656500 (N.D.Tex. Nov. 4, 2003). That case was tried to a jury, which found in favor of the defendant. Judgment, docket entry 45, *Pereira v. Potter,* 03–cv–2684R, 2005 WL 3046417 (N.D.Tex. July 18, 2005). In November of 2005, plaintiff filed a *pro se* complaint in the Northern District of Oklahoma asserting that officials of the USPS violated the Equal Protection Clause, plaintiff's constitutional rights to privacy and property, and engaged in a civil conspiracy to deprive him of his civil rights. *Pereira v. Holmes,* 06–cv–643, 2006 WL 3916368 (N.D.Okla. Nov. 17, 2006). This lawsuit was dismissed with prejudice as barred by the statute of limitations. Order, *Pereira v. Holmes,* 06–cv–643 (N.D.Okla. Sept. 30, 2008).

Plaintiff's complaint in this case is markedly similar to the *pro se* complaint filed in the Oklahoma action. Thus, the complaint contains various allegations implicating other laws that may have been relevant there, such as a contention that the "officials sought to punish the plaintiff in retaliation for having filed a charge with the Equal Employment Opportunity Commission," ¶ 1, and that there was a "conspiracy to violate Plaintiff's civil rights." ¶ 85. But the only claim at issue here is for a violation of 28 U.S.C. § 1875, specifically that "[t]he actions described herein is [sic] in violation of 28 U.S.C. § 1875 which provides that no employer shall discharge any permanent em-

ployee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." ¶ 91. Plaintiff requests reinstatement to his former employment and "damages in the form of loss of wages and benefits, and substantial out-of-pocket costs, including attorneys' fees." ¶ 92.

The Government has moved to dismiss the complaint because, *inter alia*, lawsuits alleging violations of 28 U.S.C. § 1875 must be brought in district court. Def.'s Mot. (docket entry 4, July 8, 2008).

*Lawsuits under 28 U.S.C. § 1875 Must Be Brought in District Court*

■ The Government argues that § 1875(d)(1) requires lawsuits alleging wrongful employment action based upon jury service to be brought in federal district court. Subsection (d)(1) of § 1875 provides that "[a]n individual claiming that his employer has violated the provisions of this section may make application to the district court for the district in which such employer maintains a place of business and the court shall, upon finding probable merit in such claim, appoint counsel to represent such individual in any action in the district court necessary to the resolution of such claim."

The Federal Circuit has previously held that a statutory grant of jurisdiction only to "the district court for the district in which" some condition exists precludes bringing suit in this court. *Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1373 (Fed.Cir. 2005) (holding that statute permitting suit "only in the United States district court for the district in which the insured farm is located" specifically requires that suits be brought in the district courts rather than the Court of Federal Claims); *Blueport Co., LLP v. United States*, 71 Fed.Cl. 768 (2006) ("[T]he general rule is when jurisdiction is explicitly conferred on a designated court, such as here to the 'district courts,' such designation bars other courts from entertaining claims under that statute."). But it is possible to read § 1875(d)(1) not as providing exclusive jurisdiction for merits claims in the district courts, but as instead allowing appointment of counsel only if the plaintiff makes application in the district courts.

*McNulty v. Prudential–Bache Securities*, 871 F.Supp. 567, 570 n. 1 (E.D.N.Y.1994) ("The statute seems to contemplate that the application for counsel may be made independently of a proceeding addressing the merits of the underlying dispute.").

A more pertinent statute is 28 U.S.C. § 1363, which gives district courts "original jurisdiction of any civil action brought for the protection of jurors' employment under section 1875 of this title." A grant of "original jurisdiction" to the district courts has been construed to confer exclusive jurisdiction and preclude suit in this forum. *Moore v. Durango Jail*, 77 Fed.Cl. 92, 96 (2007) (finding no jurisdiction in this Court over claim based upon 42 U.S.C. § 1983 in view of provision in 28 U.S.C. § 1343(a) that "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced" to redress deprivation of federal civil rights); *Fry v. United States*, 72 Fed.Cl. 500, 504–05 (2006) (concluding similar language "only confer[s] jurisdiction on United States District Courts"); *Flowers v. United States*, 2008 WL 4810044, —— Fed.Appx. —— (Fed. Cir. Nov.5, 2008) (statute providing that the "district courts shall have original jurisdiction" vested jurisdiction "exclusively in district courts"). Because 28 U.S.C. § 1363 grants jurisdiction only to the district courts, the Court of Federal Claims lacks the power to hear plaintiff's lawsuit, and his complaint must be dismissed.

*Transfer to District Court Would Be Futile*

■ Pursuant to 28 U.S.C. § 1631, when this Court lacks jurisdiction over a case, it is to transfer the case to another court where the lawsuit could have been brought if it is "in the interest of justice" to do so. In this circumstance, a transfer of this matter *sua sponte* to a district court in either Oklahoma or Texas would not be in the interest of justice because that transfer would be futile. *Little River Lumber Co. v. United States*, 7 Cl.Ct. 492, 494 (1985) ("[A] case should not be transferred or retransferred to a District Court if it most probably would be a futile act.").

28 U.S.C. § 1875 protects only federal jurors. H.R. Rep. 95–1652, 95th Cong., 2d Sess., at 15 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5477, 5488 ("This section of the bill is intended to provide statutory protection for the continued employment of persons summoned to federal jury service. It would do so by adding a new Section 1875 to Chapter 121 of Title 28, United States Code."). Because plaintiff's alleged wrong arises out of service on a state jury, 28 U.S.C. § 1875 does not apply and cannot be the basis for plaintiff's claims in another court.

## CONCLUSION

For the reasons stated, complaint is **DISMISSED** for lack of subject matter jurisdiction. The Clerk of the Court is directed to enter judgment consistent with this opinion.

**IT IS SO ORDERED.**